UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA ex rel. | ) | |
|---|---|---|
| OMAR GALVEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 11 C 6994 |
| MARCUS HARDY, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the petition for a writ of habeas corpus filed by Petitioner Omar Galvez ("Galvez") pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

### BACKGROUND[1]

Following a jury trial in the Circuit Court of Cook County, Illinois, Galvez was found guilty of first degree murder and sentenced to forty-six years of imprisonment.

---

[1] The state court's factual findings are presumed correct, and a petitioner may rebut this presumption only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Galvez is currently in the custody of Respondent Marcus Hardy ("Respondent"), the Warden at Stateville Correctional Center in Joliet, Illinois.

At trial, Anthony Muniz ("Muniz"), a member of the Maniac Latin Disciples gang, testified against Galvez. According to Muniz, on the night of September 28, 2000, he was with his brother Noel Torres ("Torres") and fellow gang members in the parking lot of a Chicago pizzeria. Muniz saw a blue car approaching, driven by rival Latin Lovers gang member Pedro Samano ("Samano"), also known as Pee Wee. Muniz alerted his friends when Samano stopped the car near the entrance to the parking lot. Muniz then saw Galvez, whom he recognized as a Latin Lovers gang member from the neighborhood, lean out of the passenger side window and fire four or five shots at Torres and the men standing near him. A bullet struck Torres in the head and killed him.

At the scene, Muniz told a Chicago police officer that the driver of the car and shooter were Latin Lovers gang members. Muniz identified the driver as an individual known as Pee Wee and described the shooter as a Hispanic individual from the neighborhood. At the police station, Muniz identified Samano from a book of photographs as the driver of the car. Muniz could not identify the shooter from the book of photographs, and Galvez's photo was not in the book. Another member of the

Maniac Latin Disciples who was standing next to Torres when he was killed also identified Samano as the driver.

Approximately three years later, the police arrested Samano for an unrelated matter. Samano gave a false name to the police because he feared he would be charged for his role in Torres' death. After the police learned his true identity, Samano relayed his account of the crime and identified Galvez as the shooter from a photo array. Then, on October 15, 2003, Muniz also identified Galvez as the shooter in a photo array and a lineup.

Samano admitted at trial that he drove the blue car to the pizzeria with Galvez in the passenger seat but proclaimed no knowledge that Galvez planned to shoot anyone. Samano testified that he parked his car by the pizzeria, heard gunshots coming from the passenger side of the car, and then saw Galvez holding a black gun on his lap. Galvez urged Samano to drive away, and Samano complied. Samano parked the car two blocks away, where Samano and Galvez got out of the car and ran in different directions.

After a jury found Galvez guilty of first degree murder and for causing Torres' death by personally discharging a firearm, the Circuit Court of Cook County sentenced Galvez to a total of forty-six years of imprisonment. On appeal, Galvez raised issues concerning gang evidence that are not included in his habeas petition. The state

appellate court affirmed the judgment and the Illinois Supreme Court denied Galvez's petition for leave to appeal.

On March 6, 2009, Galvez filed a pro se post-conviction petition in the Circuit Court of Cook County. Galvez contended, among other things, that: (1) police denied him his right to counsel during a pre-trial lineup; (2) trial counsel was ineffective for failing to object to Muniz's and Samano's identification of Galvez; and (3) appellate counsel was ineffective for failing to raise many issues, including trial counsel's failure to call alibi witnesses. The petition included affidavits from Alexander Galvez, Jimmy Cabanas, and Michael Cabanas (the "Alibi Witnesses"), which stated that they were with Galvez at a different Chicago restaurant at the time of the shooting. According to the affidavits, the Alibi Witnesses informed Galvez's trial attorney of their statements. The court dismissed the petition, finding it frivolous and patently without merit.

On appeal, Galvez's counsel filed a brief addressing only whether trial counsel was ineffective for failing to call the Alibi Witnesses. Galvez sought leave to file a pro se supplemental brief raising two additional issues: (1) whether trial counsel was ineffective for failing to object to the in-court identification testimony of Muniz and Samano and Samano's out-of-court declarations and identification of Galvez; and (2) whether Galvez was denied his right to counsel during a lineup. Without explanation, the state appellate court denied Galvez leave to file his pro se supplemental

brief. On December 13, 2010, the state appellate court affirmed the circuit court's decision, holding that trial counsel was not ineffective for failing to call the Alibi Witnesses. Galvez's appellate counsel filed a petition for rehearing that was denied on January 5, 2011. Galvez subsequently sought leave to file a pro se petition for rehearing that the state appellate court denied, noting that a defendant represented by counsel has no authority to file pro se motions.

Galvez's counsel filed a petition for leave to appeal in the Illinois Supreme Court and Galvez sought leave to file a supplemental brief. On February 22, 2011, the Illinois Supreme Court returned the unfiled supplemental brief to Galvez, explaining that Galvez could not file a brief because he was represented by counsel. On March 30, 2011, the Illinois Supreme Court denied Galvez's petition for leave to appeal.

On October 4, 2011, Galvez filed a petition for a writ of habeas corpus with this Court under 28 U.S.C. § 2254.

**LEGAL STANDARD**

A district court may entertain an application for a writ of habeas corpus on behalf of a state prisoner who is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A court may award habeas relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or

"was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

## DISCUSSION

Galvez asserts five claims in his habeas petition: (1) trial counsel was ineffective for failing to call the Alibi Witnesses at trial ("Claim One"); (2) trial counsel was ineffective for failing to object to the in-court identification testimony of Muniz and Samano ("Claim Two"); (3) trial counsel was ineffective for failing to challenge Samano's out-of-court declaration and identification ("Claim Three"); (4) police denied Galvez his right to counsel during a pre-trial lineup ("Claim Four"); and (5) appellate counsel was ineffective for failing to raise Claims Two, Three, and Four ("Claim Five").[2]

## I. Claims Two, Three, Four, and Five

Respondent argues that Claims Two, Three, Four, and Five are procedurally defaulted. The procedural default doctrine precludes a federal court from considering the merits of a habeas claim when either: (1) the claim was not presented to the state courts and the opportunity to raise the claim has passed; or (2) the claim was presented to the state courts and the state court ruling against the petitioner rests on an

---

[2] Although Galvez does not set out an independent fifth ground for relief in his petition, several of his claims include the distinct argument that appellate counsel was ineffective for not raising the claim. Accordingly, the Court follows Respondent's suggestion and characterizes these distinct assertions as Claim Five.

independent and adequate state law procedural ground. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

Respondent argues, and Galvez does not dispute, that Galvez never raised the issue of appellate counsel's effectiveness (i.e., Claim Five) to the state appellate court in either the brief filed by counsel or his pro se supplemental brief. Because Galvez failed to present the claim to the state courts and his opportunity to do so has expired, Claim Five is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (explaining that a state prisoner in Illinois must present his claims to both the Illinois Appellate Court and the Illinois Supreme Court before a federal court can consider the prisoner's claims).

Respondent also argues that Claims Two, Three, and Four are procedurally defaulted because the state courts declined to consider the claims based on an independent and adequate state law procedural ground. Galvez sought leave to raise these claims in a pro se supplemental brief[3] but, on February 22, 2011, the Illinois Supreme Court returned the unfiled brief to Galvez, advising him that he could not file a pro se motion because he was represented by counsel. The Court must determine

---

[3] Because neither party provided the Court with a copy of the pro se supplemental brief, the Court cannot determine which claims Galvez attempted to raise before the Illinois Supreme Court. For purposes of this Memorandum Opinion only, the Court assumes that Galvez attempted to raise Claims Two, Three, and Four.

whether the Illinois Supreme Court's decision to reject Galvez's pro se supplemental brief was based on an independent and adequate state law procedural ground.

A state law ground is independent when the court actually relied on the procedural bar as an independent basis for disposing of the claim. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied. *Id.* In Illinois, a defendant does not have the right to both self representation and the assistance of counsel. *People v. James*, 841 N.E.2d 1109, 1113 (Ill. App. Ct. 2006) (citing *People v. Serio*, 830 N.E.2d 749, 757 (Ill. App. Ct. 2005)). "Thus, when a defendant is represented by counsel, the defendant . . . has no authority to file pro se motions," except to challenge the effectiveness of his or her present counsel. *James*, 841 N.E.2d at 1113 (citing *Serio*, 830 N.E.2d at 757). The Illinois Supreme Court expressly stated that Galvez could not file a pro se motion because he was represented by counsel and, thus, the court actually relied on the procedural bar as an independent basis for rejecting Galvez's pro se supplemental brief. Additionally, the Illinois state courts regularly followed this procedural rule at the time it was applied and, thus, the state law ground provided an adequate basis for disposing of Galvez's pro se brief. *See, e.g., In re Sean N.*, 911 N.E.2d 1094, 1095-96 (Ill. App. Ct. 2009) (disregarding pro se brief because defendant was represented by counsel). Accordingly, the Illinois Supreme Court's

ruling against Galvez rested on an independent and adequate state law procedural ground.

Galvez, relying on *Kizer v. Uchtman*, 165 F. App'x 465 (7th Cir. 2006), maintains that Claims Two, Three, and Four are not procedurally defaulted. In *Kizer*, the Seventh Circuit held that the petitioner's claims were not procedurally defaulted where the state courts denied his requests to raise the claims in pro se supplemental briefs. *Id.* at 465. Galvez's reliance on *Kizer* is misplaced. First, the issue in *Kizer* was whether the petitioner fairly presented his claims to the state courts, *id.* at 467-68, whereas the issue in this case is whether Galvez's claims were procedurally defaulted based on an independent and adequate state law ground. Indeed, the *Kizer* court expressly declined to resolve this issue. *Id.* at 467 n.1 ("we do not address in this [o]rder whether the independent and adequate state ground doctrine could support a procedural default determination"). Second, unlike in *Kizer* where the state court summarily rejected the petitioner's supplemental brief without explanation and without citing a procedural rule justifying the denial, *id.* at 466, here, the Illinois Supreme Court expressly relied on a state law procedural ground when it informed Galvez that it could not accept his brief because he was represented by counsel. Finally, even if the *Kizer* decision were relevant to this case, which it is not, the unpublished opinion is not binding. *See* Fed. R. App. P. 32.1.

The Court may consider Galvez's procedurally defaulted claims only if Galvez demonstrates either cause for the default and resulting prejudice or that a miscarriage of justice will result if the court fails to consider the claims on the merits. *Perruquet*, 390 F.3d at 514. Galvez does not assert any basis for this Court to excuse his procedural default and, upon examination of the record, the Court discerns no cause and prejudice or miscarriage of justice. Appellate counsel's failure to raise the procedurally defaulted claims before the state court could establish cause for the default only if Galvez asserted a claim for ineffective assistance before the state court. *See Lewis v. Sternes*, 390 F.3d 1019, 1026-27 (7th Cir. 2004) (finding that ineffective assistance of counsel could not constitute cause for the procedurally defaulted claims unless petitioner fairly presented a claim for ineffective assistance to the state courts). Because Galvez never asserted a claim for ineffective assistance of appellate counsel before the state court, counsel's alleged ineffectiveness cannot establish cause for the procedurally defaulted claims. To establish a miscarriage of justice, Galvez must present new, reliable evidence and demonstrate that, in light of the evidence, no reasonable juror could find him guilty beyond a reasonable doubt. *See Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (citing *Schlup v. Delo*, 513 U.S. 298, 324, 329 (1995)). Galvez relies on affidavits from the Alibi Witnesses. However, even considering the testimony of the Alibi Witnesses, a reasonable juror could have found Galvez guilty based on the

identification testimony of Muniz and Samano because the "testimony of a single witness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." *Woods*, 589 F.3d at 377 (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)).

For these reasons, the Court holds that Claims Two, Three, Four, and Five are procedurally defaulted.

## II.    Claim One

Galvez claims he received ineffective assistance because his trial counsel failed to present the Alibi Witnesses. According to Galvez, the Alibi Witnesses would have testified that he was with them at the time of the shooting and, therefore, could not have shot and killed Torres. Galvez argues that, had the jury heard the testimony of the Alibi Witnesses, a reasonable probability exists that the jury would have found Galvez not guilty.

The state appellate court concluded that Galvez's claim for ineffective assistance of counsel lacked merit. First, the court stated that a strong presumption existed that counsel's decision not to call the Alibi Witnesses was the product of trial strategy. The court found that defense counsel may have determined that Alexander Galvez's testimony was not persuasive since he was related to Galvez. Defense counsel initially listed Alexander Galvez as a potential witness during discovery but ultimately decided against presenting his testimony at trial. Galvez could not overcome the presumption that counsel's decision was the product of trial strategy. Second, given the

identification testimony against Galvez, the court found that Galvez could not demonstrate that he was prejudiced by counsel's decision not to call the Alibi Witnesses. According to evidence presented at trial, Muniz witnessed Galvez shoot Torres. Muniz recognized Galvez because he previously saw him around the neighborhood and Muniz's familiarity with Galvez enhanced the credibility of his identification testimony. Additionally, Samano, the driver of the car, identified Galvez as the shooter. For these reasons, the state court held that Galvez was not denied effective assistance of counsel.

For habeas relief, Galvez must prove that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.[4] 28 U.S.C. § 2254(d)(1).

First, the Court examines whether the state appellate court's decision was contrary to clearly established federal law. A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law or it arrives at a result different from a Supreme Court case with materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). The state court decision need not cite the governing law. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). The Supreme Court set forth the governing standard for a claim of ineffective assistance of counsel in

---

[4] Galvez's claim cannot be based on Section 2254(d)(2), i.e., that the state court unreasonably determined the facts in light of the evidence presented, because Galvez claims that counsel failed to present all of the evidence.

*Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). Under *Strickland*, the petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness under the circumstances, and (2) the deficient performance resulted in prejudice. *Id.* Here, although the state appellate court did not cite *Strickland*, the court relied on Illinois cases which do cite *Strickland* and set forth the proper standard. The state appellate court correctly applied the *Strickland* test by evaluating the reasonableness of counsel's decision and analyzing any resulting prejudice. Galvez cites no Supreme Court case with materially indistinguishable facts and a different result from his case. Accordingly, the state appellate court's decision was not contrary to *Strickland*.

Second, the Court considers whether the state appellate court's decision constituted an unreasonable application of clearly established federal law. The state court's decision constitutes an unreasonable application of clearly established law if the state court applied *Strickland* in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). The federal habeas court does not independently apply *Strickland*, but instead only evaluates the objective reasonableness of the state court's decision. *Id.* (explaining that "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [the governing law] incorrectly").

As discussed above, to prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness under the circumstances, and (2) the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 690, 694. When evaluating counsel's performance, the court is highly deferential to counsel's judgments, and the petitioner must overcome the presumption that counsel's action was sound trial strategy. *Id.* at 689-91. Under Illinois law, the "decision whether or not to call a particular witness about a particular subject is a matter of trial strategy, left to the discretion of trial counsel." *People v. Clarke*, 915 N.E.2d 1, 16 (Ill. App. Ct. 2009) (citation omitted). The "decision carries a strong presumption that it was the product of strategy rather than incompetence" and, thus, is "generally immune from claims of ineffective assistance of counsel." *Id.* (citation omitted).

The Court must determine whether the state appellate court unreasonably concluded that counsel's performance fell within the bounds of professional competence. Galvez provided no support to overcome the presumption that counsel's action was sound trial strategy.[5] Galvez's counsel knew of the Alibi Witnesses and the substance of their statements and had listed Alexander Galvez as a potential witness

---

[5] The factual basis for Galvez's claim appears undeveloped because neither party presented evidence concerning why Galvez's counsel decided not to call the Alibi Witnesses to testify. Even so, Galvez is not entitled to an evidentiary hearing because he has not satisfied the requirements of 28 U.S.C. § 2254(e)(2).

during discovery. The state appellate court theorized that counsel may have justifiably doubted the Alibi Witnesses' credibility because each was a relative or friend of Galvez. Although Galvez compares his case to *Malone v. Walls*, 538 F.3d 744 (7th Cir. 2008), Galvez overlooks the crucial distinction that the counsel in *Malone* omitted the testimony of an independent witness. *Id.* at 748-49 (remanding to district court to determine whether counsel's decision was objectively unreasonable). Further, since Galvez was charged more than three years after the crime, counsel may have doubted the ability of the Alibi Witnesses to recall Galvez's whereabouts on a specific date and at a specific time more than three years earlier. The alibi testimony is further weakened by the fact that no independent witness or evidence could corroborate the testimony. Because of the evident bias, the state appellate court concluded that counsel's decision not to present the testimony of the Alibi Witnesses was reasonable. Although reasonable minds could differ regarding whether counsel should have presented the alibi testimony, the state appellate court's conclusion was not unreasonable. Because the state appellate court reasonably decided that Galvez failed to satisfy the first prong of *Strickland*, the Court need not address the state appellate court's analysis of the second prong.

      Galvez fails to satisfy the standard for habeas relief. Accordingly, this Court denies Galvez's habeas petition.

### III. Certificate of Appealability

According to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [petitioner]." A district court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c).

When a district court has rejected a constitutional claim on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As discussed above, the Court denied Claim One on the merits, holding that the state appellate court reasonably found that counsel's decision was within the boundaries of professional competence. Because the petitioner has not demonstrated that reasonable jurists could find this holding debatable, the Court declines to issue a certificate of appealability for Claim One.

When a district court denies a habeas petition on procedural grounds, the petitioner must show that jurists of reason would find it debatable: (1) whether the district court's procedural ruling was correct; and (2) whether the petition states a valid claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484. As discussed above, the Court denied Claims Two, Three, Four, and Five on procedural grounds,

holding that the claims were procedurally defaulted. Galvez has not shown that reasonable jurists could debate the correctness of this Court's procedural ruling given the Illinois Supreme Court's express reliance on the procedural bar for Claims Two, Three, and Four, and Galvez's failure to submit Claim Five to the Illinois Appellate Court. Because Galvez cannot satisfy the first inquiry, this Court need not address the second. *See id.* at 485 (encouraging courts to first resolve procedural issues and restrain from unnecessarily resolving constitutional questions). Accordingly, this Court declines to issue a certificate of appealability for Claims Two, Three, Four, and Five.

## CONCLUSION

For the foregoing reasons, the Court denies Galvez's petition for a writ of habeas corpus and declines to issue a certificate of appealability.

_____
Charles P. Kocoras
United States District Judge

Dated:  February 22, 2012